IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| De'Andre Hayes,<br><br>    Petitioner,<br><br>vs.<br><br>Thi Hien Duong,<br><br>    Respondent. | Civil Action No.: 3:25-cv-00554 |

**EMERGENCY VERIFIED PETITION FOR WARRANT IN LIEU OF WRIT OF HABEAS CORPUS AND VERIFIED PETITION FOR RETURN OF MINOR CHILD TO ITALY AND IMMEDIATE SHOW CAUSE ORDER**

The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 USC §§ 9001 et seq.

**PREAMBLE**

1. This verified petition is brough by De'Andre Hayes (Father) to secure the return of his child, N. A. Duong, 4 years-old (minor child), who was without Father's consent and/or acquiescence, wrongfully removed from Italy, the minor child's habitual residence, and brought to the Western District of North Carolina by the minor child's mother, Thi Hien Duong (Mother).

2. The petition is filed pursuant to The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (1980 Convention)[1] and

---

[1] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, reprinted in 51 Fed. Reg. 10493 (1986), a copy of which is attached hereto at ***Exhibit 1***.

the International Child Abduction Remedies Act, 22 USC §§ 9001 et seq., (ICARA).[2] The 1980 Convention came into effect in the United States of America on July 1, 1988, and was also entered into force between the United States of America and Italy on May 1, 1995. A copy of the 1980 Convention and ICARA are annexed here as ***Exhibit 1*** and ***Exhibit 2***, respectively.

3. The object of the 1980 Convention is (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States.[3] See 1980 Convention, art. 1 at ***Exhibit 1***.

4. The 1980 Convention applies to cases in which one parent wrongfully removes and retains their child, who is under the age of sixteen (16) years, from the child's habitual residence[4] in breach of the other parent's custodial rights, which were being exercised at the time

---

[2] ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. See Distler v. Distler, 26 F.Supp.2d 723, 727 (D.N.J. 1998).

[3] "The Convention does not define 'habitual residence,' but, as the Convention's text and explanatory report indicate, a child habitually resides where she is at home. This fact-driven inquiry must be 'sensitive to the unique circumstances of the case and informed by common sense.' *Redmond* v. *Redmond,* 724 F. 3d 729, 744." *See Monasky v. Tagileri,* 140 S.Ct. 719, 720 (2020). The Fourth Circuit has previously noted that American courts will normally accord considerable deference to foreign adjudications as a matter of comity and that, indeed, comity is at the heart of the 1980 Convention. *Miller v. Miller,* 240 F.d 392, 400 (2001). Furthermore, the Fourth Circuit has stated that a court's inquiry under the 1980 Convention is limited to the merits of the abduction (in this case, wrongful removal) claim, and that the merits of any underlying custody case are not at issue. *Id.* at 398. As has been stated by other courts addressing 1980 Convention cases, the 1980 Convention therefore authorizes a federal district court to determine the merits of the abduction claim (in this case, wrongful removal) but does not allow it to consider the merits of any underlying custody dispute. *Fawcett v. McRoberts,* 168 F.Supp.2d 595 (W.D.Va. 2001); *see also Morris v. Morris,* 55 F.Supp. 2d 1156, 1160 (D. Colo. 1999) (recognizing that "[p]ursuant to Article 19 of the [Hague] Convention, [this court] has no power to pass on the merits of custody"); *see also Currier v. Currier,* 845 F.Supp. 916 (D. N.H. 1994) citing *Friedrich v. Friedrich,* 983 F.2d 1396, 1399 (6th Cir. 1993); *Meredith v. Meredith,* 759 F. Supp. 1432, 1434 (D. Ariz. 1991). The court's role is not to make traditional custody decisions but to determine in what jurisdiction the children should be physically located so that the proper jurisdiction can make those custody decisions. *Loos v. Manuel,* 651 A.2d 1077 (N.J. Super. Ct. Ch. Div. 1994).

[4] "Courts in both the United States and foreign jurisdictions have defined habitual residence as the place where [the child] has been physically present for an amount of time sufficient for acclimatization and which has a decree of settled purpose for the child's perspective." *Pesin v. Rodriguez,* 77 F.Supp.2d 1277, 1284 (S.D. Fla. 1999) (citations omitted), *aff'd*, *Pesin v. Rodriguez,* 244 F.3d 1250 (11th Cir. 2001); *Morris* at 1161 ("the law requires [the court] to focus on the child in determining habitual residence"); *see also In re Robinson,* 938 F.Supp. 1339, 1341-42 (D. Colo.1997). It is a state of being or state of mind. Habitual residence is the permanent physical residence of the children as distinguished from their legal residence or domicile. *In re Bates,* No. CA 122-89, High Court of Justice, Family Div.,

of the wrongful removal[5] and/or wrongful retention[6] of the minor child. See 1980 Convention, art. 3 at *Exhibit 1*.

5. Father respectfully requests that pursuant to Articles 1(a) and 12 of the 1980 Convention that this Court order that the minor child be returned to Italy, the minor child's habitual residence.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 22 USC § 9003(a) (jurisdiction under the Hague Convention) and 28 USC § 1331 (federal question jurisdiction).

7. Venue is proper pursuant to 22 § 9003 and 28 USC § 1391(b) because, upon information and belief, Mother and the minor child are residing in Mecklenburg County, North Carolina in the Western District of North Carolina; and because this case involves the removal and retention of minor child under the age of sixteen (16) from her habitual residence of Italy to the United States of America.

---

England, February 23, 1989; *Brook v. Willis,* 907 F.Supp. 57, 61 (S.D.N.Y. 1995); *Loos,* 651 A.2d at 1080 (stating that it is immaterial that the concept of habitual residence lacks precision); *see also T.B. v. J.B.,* 2000 WL 1881251, at *1 (Supreme Court of Judicature, England, December 19, 2000) (stating that it is important to remember that the Hague Convention is concerned with the return of children to the country of their habitual residence and not with their return to any particular person).

[5] "'Article 3 of the Hague Convention provides that the removal or retention of a child is wrongful where it violates the custody rights of another person that were actually being exercised at the time of the removal or retention or would have been exercised but for the removal or retention.' *Lops* at 935; '[t]he removal of a child from the country of his or habitual residence is 'wrongful under the Hague Convention if a person in that country is, or would otherwise be, exercising custody rights to the child under that country's law at the moment of removal.'" *Frederich v. Frederich,* 78 F.3d 1060, 104 (6th Cir. 1996); *see Prevot v. Prevot,* 59 F.3d 556 (6th Cir. 1995); Article 3, Hague Convention.

[6] Wrongful retention occurs when it is in breach of rights of custody attributed to a person under the law of the country in which the child was habitually resident immediately before the retention; and at the time of retention these rights were actually exercised, or would have been so exercised, but for the wrongful retention. Hague Convention, Article 3; *Feder,* 63 F.3d at 225; *Wanninger v. Wanninger,* 850 F.Supp. 78, 80-81 (D. Mass. 1994).

## HISTORY OF THE CASE AND STATUS OF PETITIONER AND MINOR CHILD

8. Mother and Father were married to each other on January 3, 2019, in a civil ceremony in Vietnam. See **Exhibit 3**. Following their marriage, the couple moved to Italy in March 2019, when Father, a sergeant First Class in the US Army, was assigned to service at Caserma Del Din in Vincenza. See **Exhibit 4**. Mother obtained a residence permit as a spouse of a US Service member, and Mother and Father lived in government-provided housing in Torri di Quartesolo.

9. The minor child was born on July 21, 2020, and, prior to her birth, the parties' marriage had already begun to deteriorate. Father is informed and believes that Mother threatened to terminate the pregnancy. After the birth of the minor child, the situation continued to worsen. In August 2020, Father traveled to the USA for a 5-week specialization course—Mother accused Father of abandoning Mother and minor child. In September 2020, Father contracted COVID-19, which resulted in Father having to quarantine and Mother escalating the tensions. In December 2020, Father moved out of the former marital residence. Following the separation, Father filed a separation proceeding on September 26, 2021. The Court rendered a judgment in this action on September 26, 2023. See **Exhibit 5**.

10. The above-referenced judgment established joint custody of minor child, with primary residence to Mother, the allocation of the former marital residence to Mother, and Father's right to visit with minor child on alternate weekends and every Wednesday. Father was also ordered to make support payments for Mother and minor child.

11. Father is informed and believes that Mother began a campaign to interfere with Father's relationship with minor child. In particular, Mother would prevent Father from seeing the minor child for several months, forcing him to contact the Carabinieri (the Italian police) to

enforce his visitation rights. Further in July 2024, Mother prevented Father from taking minor child on a vacation to celebrate the minor child's birthday.

12. Father initiated divorce proceedings against Mother in September 2024. See ***Exhibit 6***.

13. During October and November 2024, the situation between Mother and Father deteriorated further. Father is informed and believes that Mother continued to interfere with his relationship with the minor child. On November 2-6, 2024, Father kept the minor child longer than normal as Mother requested he do so because the minor child was not feeling well.

14. On November 7, 2024, Father attempted to video call minor child, but received no response. Later on that date, Mother informed Father that she was unsure whether the minor child would attend school the next day. On November 8, 2024, Father attempted to video call, but, again, received no response.

15. On November 11, 2024, Father made three video calls to minor child without success. Mother on sent Father a picture of the minor child sleeping.

16. On November 12, 2024, Father received an email from Mother stating that she had taken minor child to South Carolina. Father is informed and believes that Mother attempted to provide Father with inaccurate information regarding her residence.

17. On or about, November 11-12, 2024, Father is informed and believes that Mother wrongfully removed the minor child from her habitual residence in Italy. Mother took the minor child to South Carolina, and then North Carolina, without the consent or acquiescence of Father.

18. Mother has kept the whereabouts of herself and the minor child from Father and has taken all efforts to conceal hers and the minor child's location. Father has since been able to locate the minor child's whereabouts; and, ultimately, it was determined that Mother and the

minor child were residing in Mecklenburg County, North Carolina, and he is initiating this matter to have the minor child returned to her habitual residence: Italy.

**WRONGFUL REMOVAL AND RETENTION OF MINOR CHILD BY MOTHER:
CLAIM FOR RELIEF UNDER THE 1980 CONVENTION**

19. A removal and/or retention of a child is wrongful under Article 3 of the 1980 Convention if: (a) the removal is in breach of custody rights attributed to a person, institution or other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal and/or retention and (b) at the time of the removal and/or retention, those custody rights were actually exercised, or would have been exercised, but for the removal and/or retention of the child. See 1980 Convention, arts. 3 & 5 at ***Exhibit 1***

20. Custody rights under the 1980 Convention are defined to include "rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence." See 1980 Convention, art. 5(a) at ***Exhibit 1***.

21. In the instant matter, the minor child's country of habitual residence, as defined in Article 3 of the 1980 Convention, is Italy, which is where the minor child was habitually residence prior to the wrongful removal to the United States of America. See Hague Convention, art. 3 at ***Exhibit 1***.

22. Father has and continues to have a right of custody to the minor child within the meaning of Articles 3 and 5 of the 1980 Convention pursuant to Italian law, specifically, under Art. 316 of the Italian Civil Code:

> "Both parents are entitled with parental responsibility and they shall exercise it by mutual agreement, taking into account their child's abilities, predispositions and expectations. Parents shall decide their child's habitual residence by mutual agreement."

> "In case of parental disagreement on main issues, either parent shall be entitled to apply informally to the Judge and suggest the measures which he/she deems most appropriate to be taken."

> "The Judge, after hearing the parents and having ordered the hearing of the child aged of twelve, and even younger when is deemed as capable of discernment, will give the most appropriate directions, in the best interests of the child and the family unit. In case of persisting parental disagreement, the Judge will confer the power to decide to the parent whom he/she deems as the most qualified, case by case, to pursue the child's best interest."
>
> "The parent who has acknowledged a child shall exercise parental responsibility over it. When both parents have recognized a child who was born out of wedlock, they shall be both entitled to exercise parental responsibility."
>
> "Even when a parent is not exercising parental responsibility, he/she will have to watch over the child's education, upraising and life conditions."

See Art. 316, Italian Civil Code. See *Exhibit 7*.

23. In addition to the above-referenced portion of the Italian Civil Code, Father is informed and believes that the orders of the Italian courts also demonstrate that he has rights of custody to the minor child.

24. The minor child is now 4-years-old. The 1980 Convention applies to children under sixteen (16) years of age and thus applies to this minor child. At the time of Mother's wrongful removal and retention of the minor child, Father was exercising custody rights within the meaning of Articles 3 and 5 of the 1980 Convention, in that he is the father of the minor child and has been actively involved in all aspects of the minor child's life since birth.

25. Father has requested the return of the minor child to Italy by filing an Application for Return with the Italian Central Authority. See *Exhibit 8*. The Application for Return has been transmitted to the United States of American Department of State, the Central Authority of the United States of America under the 1980 Convention.

26. Father has never consented or acquiesced to the retention of the minor child in the United States of America from Italy. Father respectfully submits that Mother has no right to wrongfully remove or retain the minor child and that the minor child should be allowed to return

to her habitual residence of Italy. Father is informed and believes that Mother's wrongful removal and retention of the minor child to the United States of America is causing the minor child irreparable harm and unless this Court takes immediate action to bring Mother and the minor child before the Court, the minor child will continue to be denied proper access to her Father, home, school, friends, and culture. Father has taken all legal steps available to him to seek the return of the minor child from the United States of America. Unless a show cause order is issued forthwith, Mother will continue to hold the minor child and keep her from returning home to be with Father.

**PROVISIONAL AND EMERGENCY REMEDIES AND
WARRANT IN LIEU OF WRIT OF HABEAS CORPUS**

27. Father respectfully requests that this Court issue a show cause order forthwith ordering various ex parte relief, such as a warrant seeking physical custody of the minor child, and direct that Mother be served immediately by a United States Marshal.[7]

28. Father further requests, for the well-being of the minor child, that he or his family be given immediate access to the minor child.

29. Father further requests that this Court issue an immediate order prohibiting the removal of the minor child from the jurisdiction of this Court, taking into shape keeping all the minor child's travel documents, and setting an expedited hearing on the petition for the return of the minor child.

---

[7] Such an approach is consistent with the approach of other district courts faced with equivalent concerns regarding the flight of a respondent following service of a petition for return under the 1980 Convention. See Fawcett v. McRoberts, 168 F.Supp.2d 595, 597 (W.D.Va. 2001); see also In re McCullough, 4 F.Supp.2d 411 (1998); see also Faraudo v. Hammouch, No. 01-511-JJF (D. DE. filed July 31, 2001); Bocquet v. Ouzid, No. 02-21819-CIV-JORDAN (D. Fl. filed June 18, 2002).

30. Pursuant to ICARA § 9004, in a proceeding for return of the children, "[n]o court exercising jurisdiction … may … Order a child removed from a person having physical custody of the child unless the applicable requirements of State law are satisfied." See ICARA § 9004 at ***Exhibit 2***. In this case, the law are referred to as that of North Carolina. In North Carolina, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) is the source for statutory law governing, inter alia, the resolution of both domestic and international child custody disputes and is codified as N.C. Gen. Stat. § 50A et seq. North Carolina addresses the appearance of the parties and their minor child in such cases in N.C. Gen. Stat. § 50A-210 and N.C. Gen. Stat. § 50A-311 of the UCCJEA, which authorize this Court to order the appearance of the minor child and custodian or custodians together. *Id.* Therefore, this Court has the authority to issue a show cause order, ordering a warrant seeking the immediate appearance of the minor child and Mother, together.

31. This Court "[i]n furtherance of the objectives of … the Convention … may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent further removal or concealment before the final disposition of the petition." See ICARA § 9004 at ***Exhibit 2***. This injunctive relief is necessary on an ex parte basis to prevent irreparable harm to Father.

32. Unless this Court takes immediate action to bring Mother and the minor child before the Court, irreparable harm will occur to the well-being of the minor child in that they are being denied any access to Father and are being wrongfully retained in North Carolina. Given Mother's documented history of abduction and substantial risk of flight, unless a warrant is issued, Father is informed and believes Mother will further abduct the minor child if given notice.

33. Mother poses a substantial flight risk as she has refused to provide the whereabouts of the minor child and concealed the minor child's whereabouts since November 2024.

34. Father, therefore, is informed and believes that the minor child will be removed from the jurisdiction of this Court or will suffer some irreparable injury unless a warrant is issued.

### UCCJEA DECLARATION

35. The residence of the minor child for the last five years is as follows:

36. In the least five years, the minor child has lived at the following addresses:

37. There is a pending divorce/custody action in Italy.

38. Other than the information provided in this petition, Father does not have information of any custody proceedings concerning the minor child pending in any other court of this State or any other State.

39. Father does not know of any person or institution not a party to the proceedings who has physical custody of the minor child or claims to have rights of parental responsibilities or legal custody or physical custody, visitation, or parenting time with the minor child.

### ATTORNEY FEES AND COSTS

40. To date, Father has incurred attorney fees and costs as a result of the wrongful removal and retention of the minor child by Mother.

41. Father respectfully requests that this Court award him all costs and fees, including transportation costs, incurred to date as required by 22 USC § 9007.

42. Father will submit a copy of all expenditures as soon as practicable and possible and will amend these costs, from time to time, according to proof and considering further expenditure required because of Mother's wrongful removal and retention of the minor child.

**RELIEF REQUESTED**

**WHEREFORE**, Father respectfully requests that the following relief be granted:

43. That this Court issue an Order directing the prompt return of the minor child to her habitual residence of Italy in accordance with Father's rights of custody and rights of access under the laws of Italy and Article 5 of the 1980 Convention, respectively.

44. That this Court issue a Show Cause Order issuing a warrant seeking physical custody of the minor child, N. A. Duong, 4-years-old, and directing a United States Marshal of the Western District of North Carolina to pick up the minor child and immediately transport her to the Court.

45. That this Court issue a Show Cause Order forthwith commanding Mother to appear in this Court to resolve any issues relating to the temporary custody of the minor child and to schedule an expedited hearing on whether the minor child should be returned to Italy, accompanied by Father, for finalization of the pending divorce/custody action under Italian law.

46. That this Court issue a Show Cause Order directing that pending the aforementioned hearing, the minor child is placed in Father or his family's temporary custody.

47. That this Court issue a Show Cause Order directing that pending the hearing and determination of this matter, Mother, or anyone acting in concert with her or at her direction, are prohibited from removing the minor child from the jurisdiction of this Court.

48. That this Court issue a Show Cause Order directing that a United States Marshal serve Mother with this Order and the pleadings filed by Father in this matter.

49. That this Court issue a Show Cause Order directing that Mother turn over to the United States Marshal any and all of passports/travel documents of her and the minor child, which the Clerk of Court will hold pending the hearing and determination in this matter.

50. That this Court issue an Order directing that Mother pay Father's attorney fees, costs, and expenses associated with this matter.

51. That this Court grant any such further relief as justice and Father's cause may require.

## NOTICE OF HEARING

52. Pursuant to 22 USC § 9003(c), Mother will be given notice of any hearing in accordance with N.C. Gen. Stat. §§ 50A-108 and 50A-205 of the UCCJEA.[8]

Respectfully Submitted,

/s/ Jennifer E. Wells
Jennifer E. Wells
Killoren, Kissinger, Dantin, Denton & Dunham, PC
PO Box 3547
Spartanburg, SC 29304
P: (864) 585-5100
F: (864) 542-2994
jwells@kdtriallawyers.com

---

[8] The Convention itself does not specify any notice requirements. ICARA provides that notice be given in accordance with the applicable law governing notice in interstate child custody proceedings. ICARA § 9003(c). In the United States of America, the Parental Kidnapping Prevention Act ("PKPA") and the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") govern notice in interstate child custody proceedings. *Klam v. Klam,* 797 F. Supp. 202, 205 (E.D.N.Y. 1992). The UCCJEA and Part (e) of the PKPA provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. The UCCJEA further provides that notice shall be given in a manner reasonably calculated to give actual notice. In North Carolina, the relevant statute is found in this State's UCCJEA at N.C. Gen. Stat. §§ 50A-108 & 50A-205. The notice section provides, in pertinent part, that reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated, and any person who has physical custody of the child. *Id.* Furthermore, in cases where flight of a respondent is at issue, federal courts have allowed substituted service in any manner reasonably effective to give the respondent notice of the suit. *Ingram v. Ingram,* 463 So.2d 932, 936 (La. App. 1985).